IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

SARAH A. FRYER                                                                                      PLAINTIFF

vs.                                              **2:06CV00183-WRW**

MICHAEL J. ASTRUE,                                                                              DEFENDANT
Commissioner, Social Security Administration[1]

**ORDER**

Plaintiff, Sarah A. Fryer, brings this action under sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), as amended, for judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance benefits (DIB) under Title II and for Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 416(I), 423, 1381-1382c. Both parties have submitted briefs, and the case is ready for disposition.

**I. Procedural Background**

Fryer filed applications for DIB and SSI benefits on March 24, 2003.[2] In her application for DIB, Fryer alleges disability beginning January 31, 1998.[3] In her application for SSI, Fryer alleges disability beginning June 19, 2000.[4] Her claims were denied initially and upon reconsideration. Pursuant to Fryer's request, a hearing was

---

[1]Michael J. Astrue was sworn in as Commissioner of the Social Security on February 12, 2007, and is therefore substituted for Jo Anne B. Barnhart under Fed. R. Civ. P. 25(d)(1).

[2] Fryer filed three prior applications, all of which the Commissioner denied. (Tr. 21, 147-52, 272-81, 391-400). The most recent previous application was filed on June 27, 2000, and denied by an ALJ on April 11, 2002. (Tr. 21, 423).

[3]Tr. 423-425.

[4]Tr. 518-520.

-1-

conducted by the Administrative Law Judge (ALJ) on December 21, 2004, at which Fryer, who was represented by counsel, and a vocational expert (VE) testified.[5] On April 13, 2005, the ALJ issued a decision denying Fryer's claim for benefits.[6] The Appeals Council denied Fryer's request for review, making it the final decision of the Commissioner.[7] It is from this decision that Fryer seeks judicial review.

**II. Summary of Evidence in Record**

Fryer, born on April 20, 1960, was 44 years old at the time of the hearing.[8] She has a high school education and past relevant work as a teacher's aide and a security guard.[9]

Fryer injured her right ankle in 1992 when she stepped in a hole in the grounds of the school where she was working as a teacher's aide.[10] She had surgery in 1994 to insert a plate in the fibula.[11] After surgery, Fryer missed approximately six months of work, then resumed her duties as a teacher's aide. She resigned from her teacher's aide position and worked as a security guard for about a year. Fryer stopped working as a security guard in 1998 due to right foot and ankle pain.[12]

The record shows that Fryer complained for many years of pain in her ankle.

---

[5] Tr. 579-605.

[6] Tr. 10-27.

[7] Tr. 12-14.

[8] Tr. 582.

[9] Tr. 21. The ALJ found that Fryer also had past relevant work as a meat factory worker. The record reflects that Fryer was a security guard at a meat factory. (Tr. 307, 469).

[10] Tr. 53.

[11] Tr. 257.

[12] Tr. 395.

Dr. Ramon Lopez, the surgeon who performed the ankle surgery, noted in June, 1996, that Fryer's ankle pain continued and recommended that she get a job that does not require a lot of standing or walking. Dr. Lopez also suggested that Fryer consider applying for Social Security disability.[13] She applied for disability in June, 1996, and her claim was subsequently denied by an ALJ.[14]

Fryer stopped working in January, 1998, because of pain in her right foot and ankle.[15] On February 8, 2000, Dr. Jere Disney, an orthopedist, examined Fryer. He found that she could do only 50 percent of her own housework. He determined that Fryer could sit for only one to two hours and then had to move around. Dr. Disney found that Fryer could stand for one to two hours and then must sit down. She could walk 30 to 60 minutes with some pain in her ankle. At the time, Fryer was on Tylenol and Advil. Dr. Disney found that Fryer did not have any deformity, swelling, or localized tenderness of the ankle. There was some tenderness over a three inch scar over the distal fibula. Dr. Disney found that the ankle was stable to stress in all perimeters and that there was no instability. Dr. Disney diagnosed Fryer with remote ankle fracture with residual pain, pes planus, and obesity.[16]

Dr. Kudar performed a consultative general physical examination in August, 2000.[17] He noted that Fryer had pain in her right ankle. Fryer was able to stand and walk, although she experienced pain. Fryer was not able to walk on heel-toes, or squat

---

[13] Tr. 131.

[14] Tr. 138, 147-152.

[15] Tr. 257.

[16] Tr. 258.

[17] Tr. 338-345. The name of the physician is not legible. The ALJ who denied Fryer's previous application identified the physician as Dr. Kudar. (Tr. 396). This is somewhat confusing as Fryer's treating physician for a number of years was Dr. Kumar.

and arise from a squatting position.[18]

Fryer was referred for a mental status evaluation on September 18, 2000.[19] The psychologist noted that Fryer complained of pain in her foot, and diagnosed Fryer with chronic foot pain.

Based on a referral from Dr. Kumar, Dr. Dalal saw Fryer in September, 2000, for severe chronic pain in Fryer's right ankle.[20] He diagnosed Fryer with ankle chronic degenerative disease. He said that "this is ankle arthritis and due to the incongruity this will eventually just get worse, however, at present we cannot do anything about it."[21] He prescribed Celebrex.[22]

Dr. James Gaylon, an orthopedist, conducted a consultative examination on January 31, 2002.[23] X-rays of the right ankle showed that it was stable, with no sign of arthritis or degenerative changes in the ankle. Fryer complained of pain in her right buttock, right leg, and along the lateral aspect of the right ankle. Dr. Gaylon did not find any significant localized disease in the right ankle. He believed that Fryer had

> lumbar degenerative disc disease with right radiculopathy extending down into her right leg and ankle. I do believe that this is to some extent related to her gross obesity. I think that the combination of pain in the leg and ankle and the low back buttock pain would restrict her to standing no more than 4 hours in a workday, no repeated steady bending, and no lifting over 30 pounds on a regular basis.[24]

Dr. Gaylon completed a Medical Source Statement of Ability to Do Work-Related

---

[18]Tr. 343.

[19]Tr. 346-349.

[20]Tr. 350.

[21]*Id*.

[22]*Id*.

[23]Tr. 374-375.

[24]Tr. 375.

Activities (Physical) on February 6, 2002.[25] He found that Fryer could lift 20 pounds, could stand or walk at least 2 hours in an 8-hour workday, and was not limited in sitting, or in pushing or pulling.

Fryer's previous application for disability benefits was denied on April 11, 2002.[26] The medical evidence since the denial is limited. On February 24, 2002, Fryer saw Dr. Kumar, complaining of continued pain in her right ankle. She stated that she was having "a lot of back pain, localized sitting, lying down, walking hurts her a whole lot. Sometimes it goes down the back on the [left] side."[27] Dr. Kumar diagnosed Fryer with low back pain, and hypertension, borderline high. He advised Fryer to lose weight and to go on a low salt diet. He gave her a prescription for Mobic.[28]

Fryer, complaining of foot pain, saw Dr. Dalal on April 26, 2002. He found that she had severe tenderness over the peroneal longus and peroneal brevus of the right ankle, and tenderness over the Achilles tendon. He requested that Fryer see a foot and ankle surgeon.[29]

Fryer saw Dr. Kumar on January 29, 2003. She was anxious, nervous, and unable to sleep. Dr. Kumar stated that he had never seen Fryer like that before. He prescribed some medication for her elevated blood pressure and anxiety.[30]

Fryer saw Dr. Kumar again on February 6, 2003. He noted that Fryer's

---

[25]Tr. 378-381.

[26]Tr. 391-400. The ALJ found that Fryer had the RFC to perform her past relevant work as a security guard.

[27]Tr. 490.

[28]Mobic is a nonsteroidal anti-inflammatory drug (NSAID) in prescription form. It is used to relieve the pain and stiffness of osteoarthritis and rheumatoid arthritis. http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/mob1546.shtml.

[29]Tr. 481.

[30]Tr. 484.

palpitations and anxiety were significantly better, but that she was still very depressed. Dr. Kumar continued to prescribe Xanax and Toprol over the next three months.[31]

Dr. Harold Chakales performed a consultative orthopedic examination on May 28, 2003. He noted that Fryer had an antalgic gait[32] and used a cane. Examination of the cervical spine revealed that Fryer had some limitation of motion of 10 percent in forward flexion/extension. The lumbar spine showed forward flexion to 50°, lateral flexion to 10°. Straight leg raising was negative bilaterally. The range of motion of the hips, knees, and left ankle was normal. There was no limitation of motion of the ankle, although Fryer complained of pain.[33]

Dr. Chakales's impressions were: healed fracture, distal one-third of the right distal fibula, with a chronic pain syndrome; lumbar degenerative disc disease, symptomatic; and exogenous obesity. He concluded that Fryer had difficulty stooping, bending, and squatting.[34]

At the hearing, Fryer complained that she has constant pain in her ankle that keeps her awake at night.[35] She takes Xanax to help her sleep.[36] She stated that she

---

[31] Tr. 483. "Xanax is a tranquilizer used in the short-term relief of symptoms of anxiety or the treatment of anxiety disorders."
http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/xan1491.shtml
Toprol (or Lopressor) is used in the treatment of high blood pressure, angina pectoris (chest pain), and heart attack. http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/lop1235.shtml

[32] Antalgic gait is a "self-protective limp due to pain, characterized by a short stance phase on the affected leg."
http://www.medcyclopaedia.com/library/topics/volume_vii/a/antalgic_gait.aspx

[33] Tr. 494.

[34] Tr. 495.

[35] Tr. 586, 589.

[36] Tr. 591.

is unable to be on her foot for any length of time, and that sometimes her foot bothers her when she is sitting.[37] She stated that keeping her foot propped up helps relieve the pain.[38]  On a scale of one to ten, with ten being the most pain, Fryer rated her ankle pain a seven.[39]

Fryer also complained of back pain.  She noted that she has difficulty breathing because she is overweight. [40]  She takes Tylenol for her pain.  She tried Celebrex and Vioxx, but had chest pain as a side effect.[41]

Fryer stated that she has shortness of breath, and suffers from claustrophobia.  She claims to have arthritis in the knuckles of her right hand.[42]

The ALJ posed the following hypothetical to the VE:

> Please assume you're dealing with an individual who is the same age as the claimant with the same education background and past work experience.  Further assume that the individual retains the residual functional capacity for sedentary work with the following additional limitations: Would need a job where she could alternately sit and stand; no foot control operation with the right food; limited stooping, bending, squatting; and no prolonged walking.  . . . Could that individual perform other jobs that exist in the local, regional or national economy?[43]

The VE found that there were jobs within that hypothetical at the sedentary level, such as cashier or entry-level assembler.[44]

The VE further testified that no job would be available if the hypothetical

---

[37]Tr. 587.

[38]Tr. 591.

[39]Tr. 588.

[40]Tr. 592.

[41]Tr. 593.

[42]Tr. 595.

[43]Tr. 603.

[44]*Id.*

individual was unable to engage in substantial work activity for a full 8-hour day on a regular and consistent basis due to medical problems associated with pain and obesity.[45]

### III. ALJ's Decision

The ALJ undertook the familiar five-step analysis in determining whether Fryer was disabled.[46] The ALJ found that Fryer has not engaged in substantial gainful activity since the alleged onset date. [47]

The ALJ found that Fryer has a history of fracture of the right distal fibula, obesity, and lumbar degenerative disc disease which are severe, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.[48]

The ALJ evaluated Fryer's subjective allegations and complaints pursuant to the criteria set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).[49] He found Fryer's

---

[45]Tr. 604.

[46]The five-step sequential evaluation is as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether he or she has a severe and medically determinable physical or mental impairment; (3) whether the claimant may be deemed disabled because the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title 20, Code of Federal Regulations;   (4) whether the claimant is able to return to past relevant work, despite the impairment; and if not (5) whether the claimant can perform any other kind of work. 20 C.F.R. §§ 416.920, 404.1520 (2003).  See *Cox v. Barnhart*, 345 F.3d 606, 608 n.1 (8th Cir. 2003).

[47]Tr. 22, 26.

[48]Tr. 26.

[49]These include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

subjective allegations not supported by the overall record or not fully credible. The ALJ found that Fryer has the residual functional capacity (RFC) to perform sedentary work with the option to alternately sit or stand, no foot control operation with the right foot, limited stooping, bending, or squatting, and no prolonged walking.[50] He further found that Fryer is unable to perform her past relevant work.[51] Relying on the testimony of the VE, the ALJ concluded that, considering Fryer's age, education, work experience, and RFC, Fryer is capable of performing other jobs, such as cashier or assembler, that exist in significant numbers in the national economy. The ALJ therefore found that Fryer is not disabled.[52]

### IV. Standard of Review

Fryer has the burden of proving her disability by establishing a physical or mental impairment lasting at least one year that prevents her from engaging in any substantial gainful activity.[53]

The Court's function on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.

> Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a

---

[50] Tr. 26.

[51] Tr. 27.

[52] *Id.*

[53] 42 U.S.C. § 1382c(a)(3)(A); *Baker v. Apfel*, 159 F.3d 1140, 1143 (8th Cir. 1998); *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).

contrary outcome, or because we would have decided the case differently.[54]

In this case, the Court must determine whether the Commissioner's decision that Fryer is not disabled is supported by substantial evidence .

## V. Arguments and Analysis

### A . Credibility Assessment

Fryer alleges that the ALJ failed to properly assess the credibility factors of *Polaski v. Heckler*.[55] She states that the medical records support her allegation of pain.

There is no doubt that Fryer suffers from pain. As noted above, the record is replete with references to the pain in her ankle. However, the issue is not whether Fryer suffers any pain, but whether the pain is so great that it prevents her from engaging in substantial gainful activity.[56]

The ALJ reviewed the medical evidence. He noted that the more recent medical findings showed the ankle to be stable, with no signs of arthritis. The ALJ also considered Fryer's testimony regarding her level of pain. As indicated above, Fryer rated her pain as a 7 on a scale of 1 to 10. Although she was prescribed anti-inflammatory medication in the past, she takes only Tylenol now.

The ALJ also relied on Fryer's testimony that a physician told her that the surgery was performed poorly and that her foot would eventually need to be amputated. There is no medical evidence in the record to support Fryer's statement, which the ALJ

---

[54] *Roberts v. Apfel,* 222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).

[55] 751 F.2d 943, 948 (8th Cir. 1984).

[56] *See Baker v. Apfel*, 159 F.3d 1140, 1145 (8th Cir. 1998) (question is whether pain, in and of itself, is so severe as to be disabling).

characterized as "an obvious exaggeration with respect to the severity of her condition."[57]

The physicians who evaluated Fryer found that she could engage in some level of activity. The ALJ considered her "level of discomfort" in determining that Fryer could perform sedentary work.

In sum, I find that the ALJ properly assessed Fryer's subjective complaints of pain. He did not discount them, but found that she was still capable of performing a very limited range of sedentary work.[58]

### B. Step 5 Finding

Fryer asserts the ALJ's conclusion that she can perform cashier and assembler jobs is inconsistent with the ALJ's finding at Step 4 that she could not return to her past relevant work, which was performed at the light exertional level. She argues that the jobs of cashier and assembler are also performed at the light exertional level.

Contrary to Fryer's assertion, the VE specifically testified that cashier and assembler jobs existed at the sedentary exertional level.[59] The Commissioner points to sedentary assembler and cashier jobs listed in the *Dictionary of Occupational Titles.*

Fryer also argues that the ALJ should have relied on the VE's response to the second hypothetical question instead of the first. The ALJ was not required to accept the VE's response to the second hypothetical because the ALJ determined that the impairments presented in the second hypothetical were not supported by the record.[60]

---

[57]Tr. 25.

[58]While Fryer's testimony regarding her limitations, if acceptable as credible, might support a disability finding, I will not substitute my opinion for that of the ALJ, who is in a better position to assess Fryer's credibility. *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001).

[59]Tr. 603.

[60]*McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (ALJ required to include in hypothetical only those impairments that are supported by the record and which ALJ accepts as valid).

The first hypothetical posed to the VE was proper as it included all the impairments that were supported by substantial evidence in the record as a whole.[61] Because the VE was presented with a proper hypothetical, his testimony that there were significant numbers of jobs in the national economy that Fryer "could perform despite [her] limitations constitutes substantial evidence supporting the ALJ's determination that" Fryer was not disabled.[62]

## CONCLUSION

In sum, I find that there is substantial evidence to support the Commissioner's decision that Fryer is not disabled.

Accordingly, the Commissioner's administrative decision is hereby AFFIRMED.

IT IS SO ORDERED this 27th day of September, 2007.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[61] *Tucker v. Barnhart*, 363 F.3d 781, 784 (8th Cir. 2004).

[62] *Guilliams v.* Barnhart, 393 F.3d 798, 804 (8th Cir. 2005).